UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TARA TWARDOSZ,

                          Plaintiff,

          v.

YONKERS PUBLIC SCHOOL DISTRICT, *et al.*,

                          Defendants.

---

No. 19-CV-6138 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>

Laine Alida Armstrong, Esq.
Advocates for Justice Chartered Attorneys
New York, NY
*Counsel for Plaintiff*

Ivan Ross Novich, Esq.
Alison Bo Andolena, Esq.
Littler Mendelson, P.C.
Newark, NJ
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

 Plaintiff Tara Twardosz ("Plaintiff") brings this Action against Yonkers Public School District ("YPSD") and First Mile Square, LLC ("First Mile"; together, "Defendants") alleging a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution related to her employment.  (Compl. (Dkt. No. 1).)  Before the Court is Defendants' Motion To Dismiss the Complaint Under Fed. R. Civ. P. 12(b)(6) (the "Motion").  (*See* Defs.' Not. of Mot. ("Not. of Mot.") (Dkt. No. 31).)  For the following reasons, the Motion is granted.

I.  Background

A.  Factual Background

The following facts are drawn from Plaintiff's Complaint and its attachments, (Compl.), and are taken as true for the purpose of resolving the instant Motion.

Plaintiff is employed as a bus driver by First Mile, a private bus company that is contracted by YPSD to transport students to and from Yonkers Public Schools.  (Compl ¶¶ 7–8.) Plaintiff is a member of the Transport Workers Union of Greater New York, Local 100, AFL-CIO (the "Union"), and she is entitled to the benefits of the Local 100 Collective Bargaining Agreement ("CBA").  (Compl. ¶¶ 13–14.)  The CBA contains a provision whereby drivers pick their routes, which states that "[a]ll runs shall be open for bid on seniority basis prior to the start of the school year."  (Compl. Ex. A ("Pick Provision") (Dkt. No. 1-1).)  Consistent with this provision, Plaintiff picked her bus route in August 2016, and began driving students in September 2016.  (Compl. ¶ 18.)  On January 5, 2017, Shelley O'Riley, Director of Transportation for YPSD, informed First Mile via email addressed to three First Mile recipients and one YPSD recipient that Plaintiff could no longer service her requested route.  (Compl. ¶ 19; Compl. Ex. B ("O'Riley Email") (Dkt. No. 1-2).)  The email stated that Plaintiff "[was] harassing parents, students[,] and the [bus] monitor," and that "[h]er constant rigidity, arrogan[ce,] and mean spirit are not productive with children."  (O'Riley Email.)  The email noted, however, that "[Plaintiff's] personality may be beneficial for Children's Village," and stated that, while "[Plaintiff] may be assigned to Children's Village, . . . if the constant torment continues she will be banned."  (*Id*.)  Without being informed of O'Riley's accusations or request and without being offered a hearing, Plaintiff was subsequently removed from her selected route.  (Compl. ¶ 20.)

2

The CBA states, with several inapplicable exceptions, that "[n]o employee shall be suspended or otherwise disciplined until he/she has had an opportunity to be heard at a second level hearing."  (Compl. ¶ 23; Compl. Ex. C ("Discipline Hearing Provision") (Dkt. No. 1-3).)  The CBA further states that, if a grievance cannot be resolved by the head of department, the grievant may submit the grievance in writing to the President of First Mile, and this submission will be followed by notice and, within ten days, a second level hearing involving the President or his designee, a Union representative, the grievant, and necessary witnesses.  (Compl. ¶ 24; Compl. Ex. D ("Grievance Hearing Provision") (Dkt. No. 1-4).)  The Union, on Plaintiff's behalf, sent a letter, dated February 1, 2017, to Superintendent Edwin Quezada ("Quezada") of YPSD, which stated that Plaintiff had a property interest in her selected route, and was entitled to a hearing prior to being removed from it.  (Compl. ¶ 26; Compl. Ex. E ("Quezada Letter") 2 (Dkt. No. 1-5).)[1]  This letter requested that YPSD provide a notice describing the charges against Plaintiff and propose a date for a hearing.  (Quezada Letter 3.)  Quezada did not respond, and Plaintiff received no notice describing the charges against her.  (Compl. ¶ 27.)  The Union, on Plaintiff's behalf, sent a letter, dated May 19, 2017, to First Mile's owner, Horacio Rodriguez ("Rodriguez"), which stated that Plaintiff had been disciplined in violation of the CBA, and requested a second level hearing.  (Compl. ¶ 28; Compl. Ex. F ("Rodriguez Letter") (Dkt. No. 1-6).)  In response, First Mile stated that it had no power to restore Plaintiff to the route she picked. (Compl. ¶ 29.)

As a result of Defendants' conduct, Plaintiff alleges that she has suffered a loss of reputation, humiliation, and embarrassment, (Compl. ¶ 37), as well as severe emotional distress,

---

[1] Because the Quezada Letter is not otherwise paginated, the Court refers to the ECF-generated page numbers in the upper right-hand corner.

(Compl. ¶ 38.)  "Plaintiff's ability to advance her career has been severely undercut, causing her a great hardship in trying to obtain any raises or promotions."  (Compl. ¶ 39.)  Plaintiff alleges that Defendants have violated her Fourteenth Amendment due process rights by willfully depriving her of her property interest in her selected route without appropriate procedures. (Compl. ¶¶ 34, 36, 40–41.)  Plaintiff seeks to be restored to her former position, and also seeks actual and punitive damages as well as costs and attorneys' fees.  (Compl. 6–7.)[2,3]

### B.  Procedural History

Plaintiff filed her Complaint on July 1, 2019.  (Compl.)  On September 23, 2019, Defendants filed a letter requesting a pre-motion conference to discuss an anticipated motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. No. 19.)  Plaintiff responded on October 2, 2019.  (Dkt. No. 23.)  On November 8, 2019, the Court held a promotion conference, and ordered the Parties to submit supplemental letters.  (*See* Dkt. (minute entry for Nov. 8, 2019).) Defendants submitted a supplemental letter on November 22, 2019.  (Dkt. No. 27.)  Plaintiff replied on December 6, 2019.  (Dkt. No. 28.)  On February 5, 2020, the Court held a pre-motion conference, and ordered a briefing schedule for the Motion.  (*See* Dkt. (minute entry for Feb. 5, 2020); Dkt. No. 30.)  On March 5, 2020, Defendants submitted the Motion, seeking to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  (Not. of Mot.; Defs.' Mem. of Law. in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 32); Decl. of Ivan R. Novich, Esq. ("Novich Decl.") (Dkt.

---

[2] Because the Complaint and the Complaint's Prayer for Relief are discontinuously numbered, the Court refers in this citation only to the page numbers.

[3] While Plaintiff refers to 42 U.S.C. § 1983 in her pre-motion letter, (Dkt. No. 23, at 2), it is unclear from the face of the Complaint on what basis she seeks damages.  While this does not affect the Court's ruling on the instant Motion, if she amends her Complaint, Plaintiff must identify with specificity the basis for her claims for relief.

No. 33).)  Plaintiff submitted her Opposition on April 17, 2020.  (Pl.'s Mem. of Law in Opp. to

Mot. ("Pl.'s Mem.") (Dkt. No. 37).)  Defendants submitted their Reply on May 8, 2020.  (Defs.'

Reply Mem. of Law in Further Supp. of Mot. ("Defs.' Reply Mem.") (Dkt. No. 38).)

## II.  Discussion

Defendants seek to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure

to state a claim on which relief can be granted.  (Not. of Mot.)  Defendants argue that Plaintiff

has no property interest in her selected bus route, (Defs.' Mem. 5–6), that the CBA does not

create a property interest in Plaintiff's selected bus route, (Defs.' Mem. 6–7), and that claims

against YPSD should be dismissed because YPSD is not a party to the CBA, (Defs.' Mem. 7).

With respect to Plaintiff's stigma plus claim, (*see* Pl.'s Mem. 8–9), Defendants argue that their

statements were not sufficiently stigmatizing, (Defs.' Reply Mem. 8–9), that their statements

were not public, (Defs.' Reply Mem. 9–10), and that Plaintiff did not allege a sufficient

deprivation of government employment or a legal right or status (Defs.' Reply Mem. 6–8, 10).

### A.  Standard of Review

When ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all factual

allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.

*Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014).  The Court, however, is not required to credit

"mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  *Id.* at 678 (quotation

marks omitted).  A claim is facially plausible "when the plaintiff pleads factual content that

allows the [C]ourt to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* Specifically, the plaintiff must allege facts sufficient to show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and if the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *Twombly*, 550 U.S. at 570.

On a Rule 12(b)(6) motion to dismiss, the question "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012). Accordingly, the "purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quotation marks omitted). To decide the motion, the Court "may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (quotation marks omitted).

B. Analysis

1. Property Interest Claims

To determine whether Defendants violated Plaintiff's Fourteenth Amendment due process rights, the Court "must determine (1) whether [Plaintiff] possessed a liberty or property interest and, if so, (2) what process [s]he was due before [s]he could be deprived of that interest." *Ciambriello v. County of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). The Court only considers the first question.

The Second Circuit has held that "certain contractual rights are entitled to federal protection under the Fourteenth Amendment." *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940

F.2d 775, 783 (2d Cir. 1991).  This can include rights secured through a collective bargaining agreement, including the right to continued employment. *Ciambriello*, 292 F.3d at 314 ("We have repeatedly recognized that a collective bargaining agreement may give rise to a property interest in continued employment.").  However, "not every breach of a contractual right rises to the level of a deprivation of property." *Ezekwo*, 940 F.2d at 783.  "In determining whether a particular property interest rises to the level of constitutional protection, a court must look to whether the interest involved would be protected under state law and must weigh the importance to the holder of the right." *Ciambriello*, 292 F.3d at 317 (quotation marks omitted); *see also Ezekwo*, 940 F.2d at 783 (same).  This limitation exists because, with a more expansive protection of contractual rights, "federal courts could be asked to examine the procedural fairness of every action by a state alleged to be in breach of its contracts." *S & D Maint. Co. v. Goldin*, 844 F.2d 962, 966 (2d Cir. 1988); *see also Parrett v. City of Connersville*, 737 F.2d 690, 693 (7th Cir. 1984) ("A contrary conclusion would subject virtually all personnel actions by state and local government agencies to potential federal damage suits under 42 U.S.C. § 1983—a breathtaking expansion in the scope of that already far-reaching statute, and one remote from the contemplation of its framers."); *cf. Brown v. Brienen*, 722 F.2d 360, 365 (7th Cir. 1983) ("[T]he Constitution must not be trivialized by being dragged into every personnel dispute in state and local government.").

"Generally, the types of contractual benefits that are protected by the Due Process Clause are those bearing a quality or character of 'extreme dependence,' as in the case of welfare benefits, or 'permanence,' as in the case of loss of public employment." *Dohrmann-Gallik v. Lakeland Cent. Sch. Dist.*, No. 14-CV-4397, 2015 WL 4557373, at *3 (S.D.N.Y. July 27, 2015) (citing *S & D Maint. Co.*, 844 F.2d at 966); *see also Laface v. E. Suffolk Boces*, 349 F. Supp. 3d

126, 158 (E.D.N.Y. 2018) (same), *reconsideration denied*, No. 18-CV-1314, 2019 WL 1433095 (E.D.N.Y. Mar. 29, 2019).  At least two courts have found that CBA-protected rights to a particular work assignment are not constitutionally protected.  *See Jones v. N.Y.C. Bd. of Educ.*, No. 09-CV-4815, 2012 WL 1116906, at *15 (S.D.N.Y. Apr. 2, 2012) (finding that a new assignment to administer GED testing in violation of the CBA is not a constitutional violation because the guidance counselor plaintiff "never lost her salary or her license and, as such, was never deprived of a property interest"); *Kennedy v. Lehman*, No. 03-CV-531, 2007 WL 2743457, at *6 (W.D.N.Y. Sept. 18, 2007) (collecting cases) (finding that a CBA with a provision for bidding on positions "did not create a protected property interest in being assigned to a particular job location, especially where plaintiff's job title, grade level and pay did not change as a result of the transfer"), *rev'd on other grounds*, 328 F. App'x 16 (2d Cir. 2009); *cf. Costello v. Town of Fairfield*, 811 F.2d 782, 784 (2d Cir. 1987) (holding that the failure to provide a complete CBA-guaranteed pension payment does not violate the constitution); *Danese v. Knox*, 827 F. Supp. 185, 193 (S.D.N.Y. 1993) ("[W]e hold that a public employee's right to receive line of duty sick leave under a collective bargaining agreement is not a 'property right' under the fourteenth amendment.").[4]  While some courts have alluded to the possibility of a constitutionally-protected

---

[4] While Plaintiff accurately argues that these cases do not identify a source such as a CBA for the disputed work assignment right, (Pl.'s Mem. 7–8), the Court notes that several additional courts have held that the constitution does not protect a work assignment, *see, e.g.*, *O'Hara v. Bd. of Coop. Educ. Servs., S. Westchester*, No. 18-CV-8502, 2020 WL 1244474, at *9 n.5 (S.D.N.Y. Mar. 16, 2020) ("[T]he line of cases from which *Ciambriello* derives acknowledges that a particular work assignment or employment benefit are interests that are not entitled to the protections afforded by the Due Process Clause" (quotation marks omitted)); *Epstein v. County of Suffolk*, No. 14-CV-0937, 2015 WL 5038344, at *11 (E.D.N.Y. Aug. 26, 2015) ("[P]ersonnel decisions short of termination do not constitute a deprivation of a property interest cognizable under the Fourteenth Amendment." (quotation marks omitted)); *Bertram v. Metro. Transp. Auth.*, No. 13-CV-338, 2014 WL 748933, at *5 (S.D.N.Y. Feb. 26, 2014) ("[The] [p]laintiff's claim that he was assigned to an unpopular, tedious work assignment does not implicate any constitutionally protected property interest."); *Boland v. Police Dep't of N.Y.*, No.

interest in noneconomic job benefits, none of these courts has actually found such an interest to exist. *See, e.g., Kinsey v. Salado Indep. Sch. Dist.*, 950 F.2d 988, 997 (5th Cir. 1992) ("[The plaintiff] did not have a constitutionally protected property interest in the non-economic benefit of serving as superintendent."); *Jett v. Dallas Indep. Sch. Dist.*, 798 F.2d 748, 754 (5th Cir. 1986) ("[W]e find that [the plaintiff's] oral contract here did not create a property interest in the intangible, noneconomic benefits of his assignment as coach."); *Kane v. Krebser*, 44 F. Supp. 2d 542, 549–50 (S.D.N.Y. 1999) (finding that the "plaintiff's allegation . . . that he was denied a shift change while another officer's request for such a shift change was granted, is insufficient to state a claim," and noting that "the creation of such a non-economic property interest is exceedingly rare"); *see also Arteta v. County. of Orange*, 141 F. App'x 3, 7 (2d Cir. 2005) ("[The plaintiffs] have not been deprived of a constitutionally protected property interest.")

Here, the Court similarly holds that revoking Plaintiff's selected bus route does not violate the Constitution, because her interest in the route is characterized by neither extreme dependence nor permanence. Plaintiff does not allege that she lost her job, was forced to accept a lower wage, or forfeited any other economic benefits. (*See generally* Compl.) Indeed, she does not describe any hardship created by the route change. (*Id.*) Further, the Complaint

---

06-CV-15312, 2007 WL 4225484, at *2 (S.D.N.Y. Nov. 29, 2007) ("While [the] plaintiff articulates distaste for his reassignment, he does not articulate a property interest. There is no constitutionally protected right to work overtime or to have, or not have, a specific position with specific duties in a specific location."); *Boyd v. Schembri*, No. 94-CV-7119, 1997 WL 466539, at *3 (S.D.N.Y. Aug. 13, 1997) ("[D]isputes over overtime, over work assignments, over lunch and coffee breaks do not implicate the great objects of the Fourteenth Amendment." (quotation marks omitted)); *Morales v. Bd. of Educ. William Floyd Sch. Dist.*, 479 N.Y.S.2d 330, 331–32 (Sup. Ct. 1984) (holding, where "the petitioner became ineligible to serve as a school bus driver within [one school district][,] . . . [but] remained as an employee of [another company] and could have continued to operate its school busses in another of the school districts serviced by her employer," that "[n]owhere . . . is there an allegation that a constitutionally protected liberty or procedural right has been taken away from her").

indicates that Plaintiff "is servicing a new route that she chose through a pick in August of 2017." (Compl ¶ 31.) This indicates that any deprivation of her alleged right to select a route was not permanent.

Plaintiff's allegations regarding hardship in obtaining raises or promotions, (Compl. ¶ 39), do not change the outcome. The Second Circuit in *Ezekwo* held that, in some circumstances, denial of a promotion may violate a constitutionally protected property interest. 940 F.2d at 783. However, in *Ezekwo* the denied promotion was inconsistent with the defendant's policy and practice, as well as specific verbal representations. *Id.* In addition, the plaintiff alleged that the foregone promotion would result in a reduced salary and reduced professional standing. *Id.*; *see also Ciambriello*, 292 F.3d at 312, 318 (finding that a demotion resulting in in lower salary and fewer benefits violated a constitutionally protected property right). Here, Plaintiff's allegations are conclusory. Plaintiff provides no basis to conclude that she had a right to a promotion or that keeping the desired route would improve her chances at a promotion. *Cf. McMenemy v. City of Rochester*, 241 F.3d 279, 286 (2d Cir. 2001) (finding that the civil servant plaintiff has no property interest in a promotion where the New York Court of Appeals had found that a civil servant has no right to appointment). Plaintiff likewise offers no basis to conclude that she lost salary, benefits, or professional opportunities as a result of the alleged denied promotion. (*See generally* Compl.)

Thus, Plaintiff's claim that Defendants infringed her property interest in her bus route must be dismissed.[5]

---

[5] Because Plaintiff fails to allege a constitutionally protected property interest, the Court does not consider Defendants' arguments that the CBA does not create a property interest in Plaintiff's picked bus route or that YPSD should be dismissed because it is not a party to the CBA. Plaintiff will have an opportunity to address these arguments, should she so choose, in her amended complaint.

2.  Stigma Plus Claims

To allege a stigma-plus claim that Defendants violated Plaintiff's protected interest in her reputation, Plaintiff must show, first, "that the government made stigmatizing statements about her . . . that call into question [her] good name, reputation, honor or integrity," *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006) (alteration and quotation marks omitted); second, that "these stigmatizing statements were made public," *id.* (quotation mark omitted); and, third, that the statements were made concurrently with "the loss of employment . . . or the termination or alteration of some other legal right or status," *Velez v. Levy*, 401 F.3d 75, 87–88 (2d Cir. 2005) (citations and quotation marks omitted).

To establish the second element, that the stigmatizing statements were made public, Plaintiff must allege "that there had been any dissemination of defendants' stigmatizing statements sufficient to affect plaintiffs' standing in the community or to foreclose future job opportunities." *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1063 (2d Cir. 1993). Courts have found that statements were made public when they were put into an employee's personnel file and were likely to be disclosed to prospective employers, *see Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 631–32 (2d Cir. 1996), but not when they were made via internal email and not put into an employee's personnel file, *see Kalderon v. Finkelstein*, No. 08-CV-9440, 2010 WL 9488933, at *17 (S.D.N.Y. Mar. 10, 2010), *report and recommendation adopted in relevant part, rejected in part*, 2010 WL 3359473 (S.D.N.Y. Aug. 25, 2010), *aff'd*, 495 F. App'x 103 (2d Cir. 2012); *see also Brevot v. N.Y.C. Dep't of Educ.*, 299 F. App'x 19, 21 (2d Cir. 2008) (holding that an "internal document circulated only within the [d]epartment" does not meet the publication requirement). Here, there are no allegations "that [D]efendants made the critical statements to the public in general, or to any member of the public

in particular, or to any person inquiring as to [P]laintiff[]." *White Plains Towing Corp.*, 991 F.2d at 1063.  Indeed, Plaintiffs make no allegations at all about the publication of O'Riley's email. (*See generally* Compl.)  The email itself appears to have been sent only to three First Mile affiliates and one YPSD affiliate.  (O'Riley Email.)  Because there are no allegations about the publicity of the email, and the email on its face appears to have been internal to First Mile, Plaintiff's current employer, and YPSD, the entity allegedly responsible for the stigmatizing statement, Plaintiff's stigma-plus claims must be dismissed.[6]

### III.  Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss is granted.  Because this is the first adjudication of Plaintiff's claims, the dismissal is without prejudice.  Plaintiff may file an amended complaint within 30 days of the date of this Opinion & Order.  The amended complaint should contain appropriate changes to remedy the deficiencies identified in this Opinion. Plaintiff is advised that the amended complaint will replace, not supplement, the instant Complaint, and therefore must contain all of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider.  If Plaintiff fails to abide by the 30-day deadline, her claims may be dismissed with prejudice.

---

[6] Because Plaintiff fails to allege that O'Riley's stigmatizing statement was publicized, the Court does not consider Defendants' arguments that their statements were not sufficiently stigmatizing or that Plaintiff did not allege a sufficient deprivation of government employment or a legal right or status.  Plaintiff will have an opportunity to address these arguments, should she so choose, in her amended complaint.

The Clerk of the Court is respectfully requested to terminate the pending Motion.  (Dkt.

No. 31.)

SO ORDERED.

DATED:      October 19, 2020
            White Plains, New York

———————————————————————
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE